# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO. 4:14-CV-00095-JHM**

**OWENSBORO HEALTH, INC.**                                    **PLAINTIFF**

**V.**

**SYLVIA M. BURWELL,**
**SECRETARY OF UNITED STATES DEPARTMENT**
**OF HEALTH AND HUMAN SERVICES**                         **DEFENDANT**

## Memorandum Opinion and Order

This matter is before the Court on cross-motions for summary judgment by the parties [DN 16, DN 17] and on a motion for oral argument by Plaintiff [DN 22]. This action concerns a Medicare payment rate calculation—the wage index—designed to account for the different costs of labor for Medicare-participating hospitals in different geographic areas. Plaintiff Owensboro Health, Inc. ("OHI")[1] contends that one part of this calculation—the occupational mix adjustment ("OMA")—was calculated in error for OHI's 2007 fiscal year. Specifically, OHI contends that its surgical technicians, mental health technicians, and heart center recovery technicians should have been included in the "Nursing Aides, Orderlies, and Attendants" category instead of the "All Other Occupations" category of the applicable occupational mix survey. OHI brings this action pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, seeking judicial review of a decision of the Provider Reimbursement Review Board ("PRRB"), which became the final order of the Secretary of the Department of Health and Human Services ("the Secretary"). The PRRB determined that OHI's OMA was calculated correctly and consistently with the Secretary's policy at the time. Fully briefed, this matter is ripe for decision. For the following reasons, the motion for summary judgment by Plaintiff OHI

---

[1] Five additional hospitals originally joined in the administrative proceedings below, but have not pursued their appeal before the Court. (See Pl.'s Mot. Summ. J. & Supp. Mem. [DN 16] 2 n.5; Def.'s Mem. Supp. Summ. J. [DN 17] 1 n.1.)

[DN 16] is **DENIED**, the motion for summary judgment by Defendant Secretary [DN 17] is **GRANTED**, and the motion for oral argument by Plaintiff OHI [DN 22] is **DENIED**.

## I.   BACKGROUND

### A.  Statutory and Regulatory Framework

The Medicare program pays for covered medical services provided to eligible aged and disabled persons.  Of relevance to this case, Medicare Part A reimburses hospitals for the cost of serving Medicare beneficiaries.  The Centers for Medicare and Medicaid Services ("CMS") is the agency within the Department of Health and Human Services ("HHS") responsible for administering the Medicare program.  Estate of Landers v. Leavitt, 545 F.3d 98, 104 & n.1 (2d Cir. 2008) (Secretary has vested in CMS its full rulemaking authority under Medicare Act), as revised (Jan. 15, 2009).  CMS's payment and audit functions under Part A of the Medicare program are contracted out to insurance companies known as fiscal intermediaries ("FIs").[2]  See 42 U.S.C. § 1395h (2003).

From the inception of Medicare in 1965 until 1983, hospitals were reimbursed for their actual costs in treating beneficiaries, so long as those costs were reasonable.  Under this actual cost reimbursement system, the Medicare program bore the financial risk of hospital inefficiency.  In 1983, Congress overhauled the Medicare reimbursement system, moving from the "reasonable cost" method of retrospective compensation to the Inpatient Prospective Payment System ("IPPS" or "PPS").  See Social Security Amendments of 1983, Pub. L. No. 98–21, § 601, 97 Stat. 65, 149.  Under the new payment system, hospitals are paid "predetermined, specific rates for each hospital discharge," regardless of the actual costs incurred.  FY 2007 IPPS Final Rule, 71 Fed. Reg. 47,870, 47,875–76 (Aug. 18, 2006).  "By establishing predetermined reimbursement rates that remain static regardless of the costs incurred by a hospital, Congress

---

[2] Fiscal intermediaries are now referred to as "medicare administrative contractors."  See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 706 n.2 (10th Cir. 2006) (citing 42 U.S.C. §§ 1395h(a), 1395kk-1); 42 U.S.C. § 1395h; 42 C.F.R. § 413.24(f).

sought 'to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost/effective hospital practices.'" <u>Cnty. of Los Angeles v. Shalala</u>, 192 F.3d 1005, 1008 (D.C. Cir. 1999) (quoting H.R. Rep. No. 98–25, at 132 (1983), <u>reprinted in</u> 1983 U.S.C.C.A.N. 219, 351); S. Rep. No. 98–23, at 47 (1983), <u>reprinted in</u> 1983 U.S.C.C.A.N. 143, 187 ("[IPPS amendments] are intended to create incentives for hospitals to operate in a more efficient manner, since hospitals would be allowed to keep payment amounts in excess of their costs and would be required to absorb any costs in excess of the DRG rates.").

To calculate payment amounts under the new system, the Secretary initially determines a standardized, nationwide base-payment rate, which reflects the national average cost of a typical inpatient stay. <u>See</u> 42 U.S.C. § 1395ww(d)(2). This rate consists of two components: (1) the portion of costs attributable to wage and wage-related costs (the labor-related share) and (2) non-wage costs (the non-labor share). The statute mandates that the Secretary adjust the labor-related share to reflect geographic differences in hospital labor costs, <u>id.</u> § 1395ww(d)(3)(E), which the Secretary accomplishes through annual notice-and-comment rulemaking. This adjustment factor is known as the wage index. <u>See</u> <u>Methodist Hosp. of Sacramento v. Shalala</u>, 38 F.3d 1225, 1227 (D.C. Cir. 1994). In addition, the Secretary must adjust the wage index for occupational mix. <u>See</u> 42 U.S.C. § 1395ww(d)(3)(E); <u>Se. Ala. Med. Ctr. v. Sebelius</u>, 572 F.3d 912, 915 (D.C. Cir. 2009). Once the adjusted labor-related share is calculated, it is added to the non-labor share. This base payment rate is then multiplied by the weight assigned to the diagnosis-related group ("DRG") that best describes the treatment administered for the specific discharge being reimbursed, e.g., heart transplant or allergic reaction. <u>Id.</u> The dispute here concerns the occupational mix adjustment to the wage index factor in the new IPPS formula. Specifically, the dispute concerns the classification of OHI's medical technicians on the 2006 occupational mix survey.

## B. Occupational Mix Adjustment to the Wage Index

"The wage index is calculated and assigned to hospitals based on the labor market area in which the hospital is located." FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,005. Beginning with FY 2005, CMS defines hospital labor market areas based on the Core-Based Statistical Area ("CBSAs") established by the Office of Management and Budget. Id. OHI is in a one-hospital CBSA, which means it is the only hospital in its labor market area.

In effect, the wage index permits payment of higher reimbursement rates in areas with relatively high wage levels, and proportionately lower rates in areas with wages levels below the national average. See Adventist GlenOaks Hosp. v. Sebelius, 663 F.3d 939, 942 (7th Cir. 2011). "Theoretically, variation across hospitals in the cost of care that is due to efficiency differences (such as decisions about the mix of professionals used to provide care to similar patients) should not result in payment differences, as these factors are assumed to be under management's control and provide the financial incentive to maximize efficiency." Kristin Reiter, Rebecca Slifkin & Mark Holmes, A Primer on the Occupational Mix Adjustment to the Medicare Hospital Wage Index 1 (U.S. Dep't of Health & Human Servs., Office of Rural Health Policy, Working Paper No. 86, 2006).[3] "However, as originally calculated, the wage index was capturing not only differences in the *price of labor*, but also differences in the *type of labor used*." Id. (emphasis added).

So, "[i]n 2000, Congress amended the Medicare statute to require CMS to collect wage data on hospital employees by occupational category, at least once every three years in order to construct an occupational mix adjustment ('OMA') to the wage index," 70 Fed. Reg. 60,092, 60,092 (Oct. 14, 2005), to be implemented beginning October 1, 2004 (the FY 2005 wage index). See Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000, Pub. L. No. 106–554, § 304(c), 114 Stat. 2763, 2763A–495 ("2000 Bill") (instructing the

---

[3] Attached to OHI's Motion for Summary Judgment as Appendix A. (See Pl.'s Mot. Summ. J. App. A [DN 16-1].)

Secretary to "provide for the collection of data every 3 years on occupational mix for employees of each [covered] hospital . . . in the provision of inpatient hospital services, in order to construct an occupational mix adjustment in the hospital area wage index"). As codified, the Secretary is instructed, "through survey or otherwise," to "measure the earnings and paid hours of employment by occupational category and [to] exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services." 42 U.S.C. § 1395ww(d)(3)(E)(i).[4]

Congress mandated the wage index be adjusted for occupational mix in order to "more accurately reflect relative labor costs among hospitals by removing the differences that result from hiring higher skilled or lower skilled workers," as "the wage index under section 1886(d)(3)(E) is intended to account for geographic differences in labor—not skill mix." FY 2005 IPPS Final Rule, 69 Fed. Reg. 48,916, 49,035–36 (Aug. 11, 2004). "For example, hospitals may choose to employ different combinations of registered nurses (RNs), licensed practical nurses (LPNs), nursing aides, and medical assistants for the purpose of providing nursing care to their patients. The varying labor costs associated with these choices reflect hospital management decisions rather than geographic differences in the costs of labor." Id.

The first occupational mix survey CMS created following the 2000 amendment was the Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2003) ("Form CMS-10079 (2003)" or the "2003 survey").[5] See 68 Fed. Reg. 54,905-01 (Sept. 19, 2003) (final notice of intent to collect occupational mix data from hospitals using 2003 survey for occupational mix adjustment to FY 2005 wage index). The 2003 survey had eight general occupational

---

[4] Data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services is excluded from short-term, acute care inpatient PPS because there is a separate PPS for skilled nursing facilities. See Social Security Act of 1935 § 1888(e)(4)(G)(ii) (codified at 42 U.S.C. § 1395yy).

[5] Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2003), https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/form10079.pdf.

categories—seven general service categories that were divided into nineteen specific occupation subcategories and an "all other occupations" category. See Form CMS-10079 (2003).[6]

On October 14, 2005, the Secretary published a notice in the Federal Register proposing to use a new survey, the 2006 Medicare Wage Index Occupational Mix Survey ("Form CMS-10079 (2006)" or the "2006 survey"), to apply an occupational mix adjustment to the FY 2008 wage index. Proposed Collection/Comment Request, 70 Fed. Reg. 60,092 (Oct. 14, 2005). In the proposed 2006 survey, CMS included several modifications based on comments and recommendations it received on the 2003 survey, including MedPAC's recommendation—in order "to offset additional reporting burden for hospitals"—"that CMS should combine the general service categories that account for only a small percentage of a hospital's total hours with the 'all other occupations' category because most of the occupational mix adjustment is correlated with the nursing general service category." FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,007. Accordingly, these modifications included "reducing the number of occupational categories but refining the subcategories for registered nurses." Id. CMS modified the 2006 survey further in response to public comments on the October 14, 2005 notice. See id.; see also CMS Response to Comments to the Proposed 2006 Hospital Wage Index Occupational Mix Survey ("Comments to Proposed 2006 Survey"). The revised 2006 survey provided "the transfer of each general service category that comprised less than 4 percent of total hospital employees in the 2003 survey to the 'all other occupations' category (the revised survey focuses only on the

---

[6] The occupational categories and definitions included derived directly from the U.S. Bureau of Labor Statistics (BLS) Occupational Employment Statistics (OES) survey. See Form CMS-10079 (2003). "CMS decided to use BLS's SOCs to categorize employees for the occupational mix survey in an effort to ease hospitals' reporting burden; most hospitals have had experience with collecting and reporting their employment data according to the SOC definitions." FY 2005 IPPS Final Rule, 69 Fed. Reg. at 49,034; see also id. at 49,036 ("We did not believe that the survey definitions would be problematic for hospitals because of hospitals' experience with the BLS OES survey. In fact, several hospitals and associations strongly recommended that we use the BLS definitions for the occupational mix survey. In future years, if hospitals wish to receive further clarification of the definitions of the occupational categories then we welcome their assistance.").

mix of nursing occupations), additional clarification on the definitions for the occupational categories, [and] an expansion of the registered nurse category to include functional subcategories." FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,007. The 2006 survey included two general occupational categories: Nursing and "All Other Occupations." Id. "The Nursing category has 4 subcategories: RNs, LPNs, Aides, Orderlies, Attendants, and Medical Assistants. The RN subcategory includes 2 functional subcategories: Management Personnel and Staff Nurses or Clinicians." FY 2007 IPPS Second Proposed Rule, 71 Fed. Reg. 28,644 28,646 (May 17, 2006); see Form CMS-10079 (2006) (A.R. at 96–99).[7]

Since CMS implemented the 2006 survey, it received several public comments suggesting further improvements to the occupational mix survey instructions and definitions. "Specifically, some commenters recommended that we include certain employees, such as surgical technicians and paramedics in the occupational mix adjustment. The commenters indicated that these occupations perform similar functions, and in some cases, are used as substitutes for nursing staff. Therefore, they recommended that CMS include these occupations with the nursing categories on the survey. (On the 2003 and 2006 surveys, these categories were included in the 'All Other Occupations' category.)" FY 2008 IPPS Final Rule, 72 Fed. Reg. 47,130, 47,315 (Aug. 22, 2007). In response to these suggestions, CMS created a new occupational mix survey, see 2007–2008 Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2008) (A.R. at 219–26) ("Form CMS-10079 (2008)" or the "2007–2008 survey").[8] The modifications included additional clarifications to the survey instructions, the elimination of the registered nurse subcategories, and some refinements to the definitions of the occupational

---

[7] See Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2006), https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/occmix_survey_06final.pdf.
[8] The 2007–2008 Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2008), is available at https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/2007-2008_HOSPITAL_FORM_CMS-10079_OM_Survey.zip.

categories.  See FY 2008 IPPS Final Rule, 72 Fed. Reg. at 47,315.  The revision added "Surgical Technologists"—which is a separate BLS category from "surgical technicians"—to a category with the LPNs.  See Form CMS-10079 (2008) at 5 (A.R. at 225).  There was no change to the Nursing Aides, Orderlies, and Attendants category.  Compare Form CMS-10079 (2006), with Form CMS-10079 (2008).

## C.  Applying the Occupational Mix Adjustment

The 2000 amendment mandating the OMA to the wage index required that it be implemented beginning with the FY 2005.  So, in September 2003, the Secretary published a final notice of intent to collect occupational mix data from hospitals using the inaugural Medicare Wage Index Occupational Mix Survey, Form CMS-10079 (2003), to apply an occupational mix adjustment to the FY 2005 wage index.  See 68 Fed. Reg. 54,905 (Sept. 19, 2003).  CMS completed collecting this data in April 2004.  However, CMS lacked confidence in the data, so it decided to apply the OMA to only ten percent of the wage index for FY 2005.  See FY 2005 IPPS Final Rule, 69 Fed. Reg. at 49,034, 40,052 (10% of wage index factor adjusted for occupational mix and 90% of wage index factor unadjusted for occupational mix).  For FY 2006, CMS used the same data and again applied the OMA to ten percent of the wage index.  See FY 2006 IPPS Final Rule, 70 Fed. Reg. 47,278, 47,365, 47,376 (Aug. 12, 2005).  CMS initially proposed to use the same data and methodology for the FY 2007 wage index.  See FY 2007 IPPS First Proposed Rule, 71 Fed. Reg. 23,996, 24,075–81 (Apr. 25, 2006).

However, on April 3, 2006, in Bellevue Hospital Center v. Leavitt, 443 F.3d 163 (2d Cir. 2006), the Second Circuit Court of Appeals ordered CMS to apply the occupational mix adjustment to 100 percent of the wage index effective for FY 2007.  The court ordered CMS "to immediately . . . collect data that are sufficiently robust to permit full application of the occupational mix adjustment.  All data collection and measurement and any other preparations

necessary for full application should be complete by September 30, 2006, at which time we instruct the agency to immediately apply the adjustment in full."  443 F.3d at 180.

At the time of the Bellevue decision, hospitals were already in the process of collecting new occupational mix data, covering a six month period (January through June 2006), for the revised 2006 survey, which was intended to be used for the FY 2008 wage index.  See 71 Fed. Reg. 7,047 (Feb. 10, 2006).[9]  Because of the Bellevue decision, CMS proposed to use that new data from the 2006 OM survey to calculate the FY 2007 OMA and had to accelerate the new data gathering.   To comply with the Second Circuit's order that the OMA be fully implemented for FY 2007 by October 1, CMS required hospitals to report the new 2006 survey occupational mix data for a three month period (January through March 2006) by June 1, 2006.  Joint Signature Memorandum, JSM-06412 (Apr. 21, 2006)[10]; FY 2007 IPPS Second Proposed Rule, 71 Fed. Reg. at 28,644–47, 28,650.

The fiscal intermediaries ("FIs") then had until June 22, 2006, to audit the data and submit it to CMS.  CMS then released the occupational mix data public use file on June 29, 2006.  Hospitals were given until July 13, 2006, to submit requests to their FI for corrections to their interim occupational mix data.  The FIs then had to submit the final data to CMS by July 27, 2006.  JSM-06412, at 2; FY 2007 IPPS Second Proposed Rule, 71 Fed. Reg. at 28,647.  CMS published the final wage tables on the CMS website on September 29, 2006, and in the Federal

---

[9] Since the 2000 amendment mandating the OMA beginning with the fiscal year 2005, the Medicare Act mandates that the OM data be collected "not less often than every three years."  42 U.S.C. § 1395ww(d)(3)(E).  In accordance with that mandate, the practice of CMS has been to disseminate a survey once every few years and use that survey's data for three fiscal years.   For example, the inaugural 2003 survey was intended to be used for FYY 2005, 2006, and 2007, and the 2006 survey was intended for the FYY 2008, 2009, and 2010.   However, given the Bellevue decision, CMS used the 2006 survey for the FY 2007 (and then also for FY 2008 and FY 2009).  Meanwhile, CMS, continuing to listen to public comments and to revise the survey, created the 2007–2008 survey, which was used for FYY 2010, 2011, and 2012.

[10]   The Joint-Signature Memorandum is available on the CMS website at http://www.cms.hhs.gov/AcuteInpatientPPS. Click on "Wage Index Files" and the link is titled: 2006 Occupational Mix Survey—Interim Data Collection—CMS Memo to Fiscal Intermediaries.

Register on October 11, 2006, <u>see</u> FY 2007 IPPS Final Wage Index Tables, 71 Fed. Reg. 59,886 (Oct. 11, 2006), wherein it applied the OMA to 100 percent of the wage index.

### D. Factual and Procedural Background

On the 2006 occupational mix survey, OHI classified its surgical technicians, mental health technicians, and heart center recovery technicians (collectively "medical technicians") in the Nursing Aides, Orderlies, and Attendants category. (A.R. at 9–10.) OHI timely submitted its FY 2007 occupational mix data to its FI.[11] (<u>Id.</u>) The FI audited OHI's submitted data and, pursuant to CMS survey instructions and policy, reclassified those medical technicians in the All Other Occupations category. (<u>Id.</u>)

After CMS made its Occupational Mix Survey file public on June 29, 2006, OHI sent a letter notifying its FI of its disagreement with the adjustments that had been made to the Nursing Aides, Orderlies, and Attendants wage information. OHI objected to the FI's reclassification of the medical technicians and requested that the audit adjustment be reversed and the data included in the OHI occupational mix survey as originally submitted. (Letter from Russ Ranallo, OHI, Vice President, to Stephen Yates, AdminaStar Federal, Senior Auditor, July 10, 2006, A.R. at 189; JS 10, A.R. at 64.) OHI also expressed its concern that "numerous other hospitals audited by AdminaStar included surgical techs in their occupational mix survey but did not have these positions excluded from their surveys during audit" and explained that "[t]his inconsistency by AdminaStar has put [OHI] at a disadvantage that will negatively impact the hospital." (<u>Id.</u>) "Because other hospitals were given the benefit of including their surgical techs and [OHI] was not, the [OHI] reported data is not a true reflection of their occupational mix. The error is

---

[11] During the time at issue in this case, OHI's assigned FI was AdminiStar Federal, which is now known as National Government Services ("NGS"). At the time of OHI's appeal to the PRRB, OHI's assigned FI was NGS. However, as of October 17, 2011, CGS Administrators replaced NGS as the assigned FI, which are now referred to as a Medicare Administrative Contractors, <u>see</u> <u>supra</u> note 2.

compounded by the fact that [OHI] is a one-hospital CBSA whose occupational mix will not be diluted by other hospitals." (Id.)

On July 17, 2006, a Health Insurance Specialist with CMS e-mailed OHI in response to the July 10 letter. (E-mail from Taimyra Jones, CMS, to Russ Ranallo, OHI, July 17, 2006, A.R. at 191; JS 13, A.R. at 65.) CMS told OHI that it had been "informed that AdminiStar Federal in Kentucky has not been consistent with their treatment of surgical techs and paramedics for the occupational mix survey," as "[s]ome of the AdminiStar Kentucky auditors are allowing the costs to be included with the nursing categories while other AdminiStar KY auditors are requiring the costs to be included in All Other Occupations." (A.R. at 191.) CMS stated that around May 26, 2006, it had forwarded to the FIs supplemental instructions for the 2006 survey, which stated that "surgical technicians and hospital-based paramedics may provide services similar to those provided by nursing personnel; however, on the occupational mix survey, these non-nursing occupations must be included in All Other Occupations. This is to ensure consistent reporting among hospitals." (Id. (quoting Supplemental Instructions to 2006 Survey for the FY 2007 Wage Index).) Further, CMS stated that it contacted OHI's Intermediary earlier on July 17, 2006, and requested that it immediately notify its auditors "regarding the proper treatment of these employment categories for the occupational mix survey." (Id.)

OHI replied thanking the quick response, but still expressed concern that OHI would be treated differently from other hospitals. (E-mail from Russ Ranallo, OHI, to Taimyra Jones, CMS, July 17, 2006, A.R. at 193; JS 14, A.R. at 66.) Both CMS and the FI responded to OHI. CMS responded that it instructed the FI to have its auditors make any necessary corrections no later than July 27, 2006, the deadline set in JSM-06412. "Having the [FI] perform these corrections/adjustment will ensure that each provider in the State of Kentucky's occupational

mix data is being handled consistently." (E-mail from Taimyra Jones, CMS, to Russ Ranallo, OHI, July 18, 2006, A.R. at 197; JS 15, A.R. at 66.)

The FI responded to OHI by letter regarding the medical technicians and the Occupational Mix Survey. (See Letter from Stephen Yates, AdminaStar Federal, to Russ Ranallo, OHI, July 20, 2006, A.R. at 199.) The FI explained that it had reviewed the job descriptions for the medical technicians at issue and recognized that while some of the duties may be similar to those of Nursing Aides, the medical technicians' job descriptions went beyond providing basic patient care, which was the definition of the Nursing Aides category. (Id.) Further, "[t]heir care is also more specialized operating within specific departments." (Id.) The FI quoted and attached the Supplemental Occupational Mix Survey Instructions that it received on May 30, 2006 (A.R. at 200–01), as well as a May 23, 2006 e-mail from CMS (A.R. at 202). The FI stated that it was its policy to include such positions in the All Other Occupations category and that it was the auditor's contention OHI's medical technicians were properly included in the All Other Occupations category on the Occupational Mix Survey in accordance with CMS instructions.

As noted, on October 11, 2006, CMS published in the Federal Register its final Occupational Mix Adjusted Wage Indices, hospital classifications, payment rates, and other related tables as a result of the application of the occupational mix adjustment to 100 percent of the wage index effective for FY 2007. See 71 Fed. Reg. 59,886 (Oct. 11, 2006). This October 11 publication was a final determination of the Secretary as to the amount of payment under § 1395ww(d). D.C. Hosp. Ass'n Wage Index Grp. Appeal, Medicare & Medicaid Guide (CCH) ¶ 41,025 (HCFA Adm. Dec. January 15, 1993).

On October 16, 2006, OHI made a Freedom of Information Act ("FOIA") request for detailed audited Occupational Mix Survey information on forty-five hospitals.[12] (See A.R. at 135–37.) The requested information revealed that for ten of those hospitals, medical technicians were classified in the Nursing Aides, Orderlies, and Attendants category. For thirty-five of those hospitals, medical technicians were classified in the All Other Occupations category. (See JS 19–20, A.R. at 67–68.)

OHI then appealed the FY 2007 wage index to the Provider Reimbursement Review Board ("PRRB") pursuant to § 1395*oo*(a), challenging its occupational mix data. (See A.R. at 257.) OHI contended that (1) the "[FI] erroneously and improperly audited OHI's Occupational Mix Survey to exclude different types of medical technicians from the 'Nursing aides, orderlies, and attendants' classification" and (2) "CMS compounded that error by treating those same types of technicians inconsistently or in a different manner in Occupational Mix Surveys submitted by other providers and audited by the [FI] elsewhere." (A.R. at 258.) OHI contended that this "arbitrary and inconsistent classification of medical technicians" adversely affected OHI's occupational mix adjustment to its wage index. (Id.)

The PRRB decided two issues, which were framed by the parties. First, "Whether the inclusion of surgical technicians, mental health technicians, and heart center recovery technicians in the all-others category instead of the nursing aides, orderlies and attendants category in [OHI]'s occupational-mix survey was correct." (A.R. at 7.) The Board concluded that the FI, consistent with CMS policy at the time, came to the correct conclusion that OHI's medical technicians must be classified in the All Other Occupations category. Thus, the Record reflected that the CMS policy was followed by the FI as to OHI. (A.R. at 21.)

---

[12] The hospitals were located in Kentucky, Indiana, Ohio, and Illinois. (A.R. at 135–37; JS 20, A.R. at 67–68.)

Second, the Board considered the issue: "Does the fact that CMS and its [FIs] did not classify medical technicians uniformly and that some medical technicians are classified in nursing aides, orderlies, and attendants category for some other hospitals, even while the [FI] was excluding them from that category here, require that they be reclassified here as nursing aides, order[lies] and attendants, and that [OHI]'s occupational mix be recalculated." (A.R. at 7.) 42 C.F.R. § 412.64(k)(2)(ii) delineates the limited circumstances in which CMS may make retroactive "midyear" corrections to the wage index. Under that regulation, CMS may make a midyear retroactive adjustment only "when (1) the [FI] or CMS made an error in tabulating data used for the wage index calculation; (2) the hospital knew about the error and requested that the [FI] or CMS correct the error using the established process and within the established schedule for requesting corrections to the wage data, before the beginning of the fiscal year for the applicable IPPS update (that is, by the [July 13,] 2006 deadline for the FY 2007 wage index); and (3) CMS agreed that the [FI] or CMS made an error in tabulating the hospital's wage data and the wage index should be corrected," FY 2007 IPPS First Proposed Rule, 71 Fed. Reg. at 24,089–90 (citing 42 C.F.R. § 412.64(k)(2)(ii)).[13] The Board found that neither CMS nor the FI

---

13

(k) *Midyear corrections to the wage index.*

    (1) CMS makes a midyear correction to the wage index for an area only if a hospital can show that—

        (i) The intermediary or CMS made an error in tabulating its data; and

        (ii) The hospital could not have known about the error, or did not have the opportunity to correct the error, before the beginning of the Federal fiscal year.

    (2)

        (i) Except as provided in paragraph (k)(2)(ii) of this section, a midyear correction to the wage  index is effective prospectively from the date the change is made to the wage index.

        (ii) Effective October 1, 2005, a change to the wage index may be made retroactively to the beginning of the Federal fiscal year, if, for the fiscal year in question, CMS determines all of the following—

            (A) The fiscal intermediary or CMS made an error in tabulating data used for the wage index calculation;

            (B) The hospital knew about the error in its wage data and requested the fiscal intermediary and CMS to correct the error both within the established schedule for requesting corrections to the wage data (which is at least before the beginning of the

considered that an error had been made in the position classification for OHI's data and that the evidence contained in the stipulation of facts verified that the FIs followed the policy as CMS articulated it as it pertained to OHI's classification. (A.R. at 21.)

Regarding the other hospitals' medical technicians classifications, the Board held that, because pursuant to the regulation the retroactive correction can only be initiated by the provider with the error, it had no authority to require the FI to review, identify, and correct misclassifications made in any other hospital's wage data that was not part of this appeal. (A.R. at 21.) Regarding OHI's request for a recalculation using an erroneous classification, the Board held it had no authority to require the FI to recalculate OHI's occupational mix adjustment using an erroneous classification because the Board does not have the authority under the regulation to require the FI to act contrary to the stated CMS policy at the time. (A.R. at 21.)

OHI requested review of the PRRB's decision by the CMS Administrator, who declined review. (See A.R. at 1–5.) The PRRB's decision thus became the final administrative action ("Final Order") for purposes of federal jurisdiction. 42 U.S.C. § 1395*oo*(f)(1); see Cnty. of Los Angeles v. Leavitt, 521 F.3d 1073, 1078 (9th Cir. 2008); (Compl. [DN 1] ¶ 10). As a result of this decision, OHI filed this action asserting violations of the Administrative Procedure Act. The parties have filed cross-motions for summary judgment. OHI moves the Court to reverse the decision of the PRRB and remand this matter to the agency to recalculate OHI's occupational mix adjustment for FY 2007 including the medical technicians in the "Nursing Aides, Orderlies, and

---

fiscal year for the applicable update to the hospital inpatient prospective payment system) and using the established process; and

    (C) CMS agreed before October 1 that the fiscal intermediary or CMS made an error in tabulating the hospital's wage data and the wage index should be corrected.

  (l) *Judicial decision*. If a judicial decision reverses a CMS denial of a hospital's wage data revision request, CMS pays the hospital by applying a revised wage index that reflects the revised wage data as if CMS's decision had been favorable rather than unfavorable.

42 C.F.R. § 412.64(k)–(l).

Attendants" category and to recalculate OHI's Medicare reimbursements accordingly with interest [DN 16]. The Secretary moves the Court to sustain the final decision of the PRRB [DN 17].

## II. STANDARD OF REVIEW

The Supreme Court has established a two-step process for reviewing an agency's construction of a statute that it administers. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–44 (1984). Under Chevron, the Court first must ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842–43. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. "In assessing whether the agency's construction is permissible, [the Court] need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [the Court] would have reached if the question initially had arisen in a judicial proceeding." Battle Creek Health Sys. v. Leavitt, 498 F.3d 401, 408–09 (6th Cir. 2007) (quoting Clark Reg'l Med. Ctr. v. U.S. Dep't of Health & Humans Servs., 314 F.3d 241, 244–45 (6th Cir. 2002)); Chevron, 467 U.S. at 843 n.11. The Secretary's interpretations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844; Clark Reg'l Med. Ctr., 314 F.3d at 245.

The Medicare Act provides for judicial review of the Secretary's actions pursuant to the standards of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. See 42 U.S.C. § 1395*oo*(f)(1). Under the APA, when reviewing the decision of an administrative agency, a court shall "hold unlawful and set aside the agency action" if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A court

reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." Ky. Waterways All. v. Johnson, 540 F.3d 466, 473 (6th Cir. 2008) (quoting Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992)); 5 U.S.C. § 706(2)(E). Substantial evidence is "more than a mere scintilla, but less than the weight or preponderance of the evidence" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Hoffman v. Solis, 636 F.3d 262, 268–69 (6th Cir. 2011).

Under the APA, when reviewing an agency's interpretation of its own regulations, a court must afford the agency substantial deference, giving the agency's interpretation "controlling weight unless it is 'plainly erroneous or inconsistent with the regulation.'" Clark Reg'l Med. Ctr., 314 F.3d at 245 (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)). The reviewing court's task "is not to decide which among several competing interpretations best serves the regulatory purpose." Thomas Jefferson Univ., 512 U.S. at 512. Such broad deference is "all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" Id. (quoting Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991)) (recognizing Medicare reimbursement regulations as "highly technical" and "complex").

### III. DISCUSSION

OHI contends that the Secretary's classification of its medical technicians in the All Other Occupations category violates the statutory mandate and congressional intent. OHI maintains that the Secretary's classification of its medical technicians is incorrect, pointing to the 2007–2008 survey for support. Further, OHI argues that the Secretary has acted arbitrarily in failing to classify medical technicians uniformly for all hospitals and requests as a remedy that

its medical technicians be classified as ten of the forty-five hospitals' medical technicians were—in the Nursing Aides, Orderlies, and Attendants category.

The Secretary contends that the occupational categories identified by the Secretary constitute a reasonable interpretation of the wage-index statute in an area where Congress has conferred broad discretion on the Secretary, citing FY 2007 IPPS Second Proposed Rule, 71 Fed. Reg. at 28,646 and JSM-06412. Further, the Secretary contends that, under the 2006 Survey instructions, the medical technicians at issue are to be classified in the All Other Occupations category. The Secretary concludes that in exercising her broad authority to implement the wage index statute and construct an occupational mix adjustment to the wage index, she selected a reasonable category in which to classify the medical technicians. Regarding application of the CMS FY 2007 policy to OHI, the Secretary contends that her Final Decision is supported by substantial evidence because OHI's medical technicians do not fall in a nursing category and instead are within the All Other Occupations category. Accordingly, the Secretary contends that the Final Decision should be upheld, as the FI properly included OHI's medical technicians in the All Other Occupations category. Further, the Secretary contends that while it may be true that some other hospitals improperly avoided the reclassification OHI complains of, this does not mean that OHI is entitled to the same error. To the contrary, the Secretary maintains that the decision to reclassify remains proper, other mistakes notwithstanding.

## A. Statutory Mandate

For the year at issue here, the statute provided in relevant part:

The Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a *factor* (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level. Not later than October 1, 1990, and October 1, 1993 (and at least every 12 months thereafter),

the Secretary shall update the *factor* under the preceding sentence on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States. Not less often than once every 3 years the Secretary (through such survey or otherwise) shall measure *the earnings and paid hours of employment by occupational category* and shall exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services. Any adjustments or updates made under this subparagraph for a fiscal year (beginning with fiscal year 1991) shall be made in a manner that assures that the aggregate payments under this subsection in the fiscal year are not greater or less than those that would have been made in the year without such adjustment.

42 U.S.C. § 1395ww(d)(3)(E) (2006) (emphases added). Though "CMS's task is unambiguous: to calculate a factor that reflects geographic-area wage-level differences," Bellevue, 443 F.3d at 174, the statute "does not specify how the Secretary should construct the index' and, in fact, 'Congress through its silence delegated these decisions to the Secretary,'" Anna Jacques Hosp. v. Burwell, 797 F.3d 1155, 1164 (D.C. Cir. 2015) (quoting Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1230 (D.C. Cir. 1994)). See 42 U.S.C. § 1395ww(d)(3)(E); H.R. Rep. No. 100–495, at 22 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1267 (noting that "[n]o particular methodology" for wage adjustment "is specified"); Anna Jacques Hosp., 797 F.3d at 1164 ("[T]he statutory text expressly affords the Secretary flexibility and discretion in compiling data and calculating the wage index."); Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs., 766 F.3d 560, 568 (6th Cir. 2014) ("Section 1395ww(d)(3)(E) expressly delegates substantial authority to the Secretary to determine the composition of the wage index—Congress empowered the Secretary to 'estimate[]' the proportion of labor costs and 'establish[]' the wage index.").

Likewise, the statute mandates an occupational mix adjustment to the wage index, but does not prescribe the implementation details for this adjustment. See 42 U.S.C. § 1395ww(d)(3)(E)(i); see also 2000 Bill § 304(c)(1). The statute does not define "occupational category," instead allowing the Secretary to define and apply the term. Cf. Atrium Med. Ctr., 766 F.3d at 568 (quoting Se. Ala. Med. Ctr. v. Sebelius, 572 F.3d 912, 917 (D.C. Cir. 2009)) ("Indeed,

the statute 'defines neither "wages" nor "wage-related,"' instead allowing the Secretary to define and apply those terms."); <u>Bellevue</u>, 443 F.3d at 175 (ambiguous, undefined term "geographic area" afforded Secretary considerable discretion in interpreting term); <u>Anna Jaques Hosp. v. Sebelius</u>, 583 F.3d 1, 5 (D.C. Cir. 2009). Further, the statute does not specify how the Secretary should construct the occupational mix adjustment. "Rather, Congress through its silence delegated these decisions to the Secretary" as well. <u>Cf.</u> <u>Methodist Hosp.</u>, 38 F.3d at 1230.

Administrative interpretations of statutory provisions qualify for <u>Chevron</u> deference when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226–27 (2001). Here, Congress has expressly delegated to the Secretary the authority and discretion to create and implement the wage index adjusted for occupational mix, 42 U.S.C. § 1395ww(d)(3)(E)(i), and the Secretary's calculation of the wage index adjusted for occupational mix for FY 2007, including the 2006 occupational mix survey, went through notice-and-comment rulemaking, a procedure ensuring the kind of deliberation that typically triggers <u>Chevron</u> deference. <u>See</u> <u>Mead</u>, 533 U.S. at 226. Therefore, the Court affords the Secretary's interpretation the same <u>Chevron</u> deference that other courts have repeatedly given her calculation of the wage index in the past. <u>See, e.g.</u>, <u>Anna Jacques</u>, 797 F.3d at 1166; <u>Atrium Med. Ctr.</u>, 766 F.3d at 573 ("<u>Chevron</u> deference comports with the exceptional breadth of Congress's delegation to the Secretary to establish and administer the wage index—section 1395ww(d)(3)(E)(i) grants the Secretary broad power to speak with the force of law in promulgating the wage index."); <u>Anna Jaques</u>, 583 F.3d at 5; <u>Se. Ala. Med. Ctr.</u>, 572 F.3d at 916; <u>Bellevue</u>, 443 F.3d at 175 (Secretary has the discretion to interpret the term "geographic area"); <u>Methodist Hosp.</u>, 38 F.3d at 1230; <u>Universal Health</u>

Servs. of McAllen, Inc. Subsidiary of Universal Health Servs., Inc. v. Sullivan, 770 F. Supp. 704, 718 (D.D.C. 1991) (citing Chevron, 467 U.S. at 844–45) ("Because the Act delegates to the Secretary the authority to implement the Act but is silent as to the exact means to carry out that implementation, the Court must give considerable deference to the Secretary's decisions.") aff'd sub nom. Universal Health Servs. of McAllen, Inc. v. Sullivan, 978 F.2d 745 (D.C. Cir. 1992).

OHI, relying on Wheeler v. Pension Value Plan for Employees of Boeing Co., No. 06-CV-500-DRH, 2007 WL 2608875, at *15 (S.D. Ill. Sept. 6, 2007), contends that deference is not warranted where the agency "waffles," which OHI maintains CMS has done here. However, reliance on this standard is misplaced. The portion of Wheeler quoted and relied on by OHI sets forth the level of deference due informal agency interpretations, "such as those contained in amicus briefs, opinion letters, policy statements, agency manuals[,] and enforcement guidelines," id. at *15, which generally do not receive Chevron deference. The wage index and occupational mix survey, by contrast, were promulgated through notice-and-comment proceedings, and the treatment of OHI's medical technicians is the product of published regulations. See Anna Jacques, 797 F.3d at 1165–66 (affording Secretary's decision—to treat provider as a single wage-reporting hospital—Chevron deference "because the wage index was promulgated through notice-and-comment proceedings, and the treatment of [provider] as a unified hospital for Medicare reporting is the product of published regulations").

"Pursuant to Chevron, this broad, express delegation means that the Secretary's interpretation of section 1395ww(d)(3)(E) should be upheld unless it is 'manifestly contrary to the statute,'" Atrium Med. Ctr., 766 F.3d at 568–69 (citing Chevron, 467 U.S. at 844), arbitrary, or capricious, Chevron, 467 U.S. at 844. Nothing in the Medicare Act forbade the Secretary from defining occupational categories as it did in the 2006 survey. OHI contends that the

Secretary violated the statutory mandate by failing to include OHI's medical technicians in the Nursing Aide classification because, as OHI contends, the statute directs the Secretary, "when surveying the occupational mix every three years, to be inclusive of all categories of wages *only excluding* those related to skilled nursing services that nursing homes provide."  (Pl.'s Reply Supp. Summ. J. & Resp. to Def.'s Mot. Summ. J. [DN 20] 15 (emphasis in original).)  But OHI's argument is based on the flawed premise that the Secretary excluded OHI's medical technicians' wages from the 2006 survey.  Consistent with the statutory mandate, the Secretary measured the earnings and paid hours of OHI's medical technicians by occupational category—OHI just disagrees regarding *which* occupational category the medical technicians were in.

Similarly unavailing is OHI's contention that the Secretary's interpretation ignores congressional intent and is therefore an impermissible construction of the statute.  According to OHI, "Congress intends the wage index adjustment to reward hospitals that employ a mix of medical personnel that reduces labor costs of providing nursing services."  (Pl.'s Reply & Resp. [DN 20] 16.)  OHI asserts that it "not only defies logic[,] but it is contrary to the enabling statute, 42 U.S.C. [§] 1395ww(d)(3)(E)(i), to favor lesser-skilled aides, orderlies, and attendants in the Nursing Aide classifications affecting the occupational mix equation, while excluding more highly skilled medical technicians who are more directly involved in providing patient care supplemental to the care provided by licensed nursing staff.  It is fundamental error to lump medical technicians in the All Other Occupations category to exclude their wages occupational mix adjustment."  (Id. at 21.)

The regulatory record shows that CMS considered, and rejected, similar arguments made by commenters.  See Comments to Proposed 2006 Survey.  CMS explained that "the purpose of the occupational mix survey is *not* to emphasize the salaries of lower paid employees.  Rather,

the purpose of the occupational mix adjustment is to 'standardize' each hospital's AHW [(average hourly wage)] by controlling for the *number* of employees in a particular category a hospital employs, and ultimately reflect the relative salaries paid to those employees by each hospital. Accordingly, the occupational mix survey focuses on a group of employees (i.e., nursing occupations) where, because of some amount of overlap in skills between the various occupational levels (e.g., RNs and LPNs), management does have a certain amount of flexibility to decide on the number of employees at each skill level it will employ." Id. at 25–26.

OHI's challenge, at bottom, centers on the wisdom of CMS's policy regarding the occupational categories. "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." Chevron, 467 U.S. at 866. Given the broad discretion afforded CMS in the calculation of the wage index, CMS's choice is due deference under Chevron unless "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844; Clark Reg'l Med. Ctr., 314 F.3d at 245. The scope of the Court's review is narrow, and only looks at whether CMS's choice was a reasonable one. Bellevue, 443 F.3d at 174. Upon a review of the regulatory record, the Court finds that the occupational categories used by CMS in the 2006 survey to fill the gap left by the ambiguous term "occupational category" are reasonable. In doing so, the Court "express[es] no opinion as to whether any alternative interpretation would have been 'better,' as [the Court is] not empowered to set aside a reasonable interpretation on that basis." Bellevue, 443 F.3d at 175. The Secretary considered comments and other relevant factors and articulated a reasonable explanation for its policy. Accordingly, the Secretary's interpretation is reasonable, not arbitrary, capricious, or manifestly contrary to the statute, and the Court affords it Chevron deference.

Also unpersuasive is OHI's argument that the changes in the 2007–2008 survey mandate that the agency's action here deserves no deference. The subsequent policy change did not make the initial policy unreasonable. Anna Jaques Hosp. v. Sebelius, 33 F. Supp. 3d 47, 56 (D.D.C. 2014) (citing Chevron, 467 U.S. at 863–64) ("The fact that an agency changed its policy does not make the initial policy unreasonable.") aff'd sub nom. Anna Jacques Hosp. v. Burwell, 797 F.3d 1155 (D.C. Cir. 2015); Int'l Ladies Garment Workers' Union v. Donovan, 722 F.2d 795, 814 n.33 (D.C. Cir. 1983) ("Agencies remain free to react to new information as part of their standard regulatory procedure . . . ."). "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." Chevron, 467 U.S. at 863–64. Here, the Secretary considered alternative action and had principled reasons, including consistency, administrative simplicity, and concerns regarding inaccurate or incomplete revision, for not changing its policy immediately. See Adventists Glenoaks Hosp. v. Sebelius, 663 F.3d 939, 943–44 (7th Cir. 2011) (administrative simplicity a valid and nonarbitrary basis for Secretary's decision to include all paid unworked hours in calculation of wage index factor). The Secretary acknowledged in 2006 that it was aware some hospitals were having difficulty or had questions regarding the proper category to place certain personnel, and it considered issuing a clarification to, *inter alia*, expand the number of personnel falling within the nursing category for the 2006 survey. (See CMS May 23, 2006 e-mail, A.R. at 202); FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,007. However, the Secretary determined that, given the short timeframe, it would maintain its policy to ensure consistency across hospitals and to ensure that it did not miss other occupations by making a rushed decision. (See A.R. at 202.) Thus, in late May 2006, in response to questions from hospitals and associations, CMS distributed

supplemental instructions to the FIs, hospitals (via the FIs), and national hospital associations (and posted the instructions on its website) to clarify the placement of nursing and non-nursing personnel on the occupational mix survey. FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,008. CMS reiterated that it would "continue to work with MedPAC and the hospital community to determine if changes to the occupational categories . . . included on the survey are reasonable and necessary for future collections." Id. And, indeed, as events unfolded and it continued to refine its position, CMS subsequently evaluated changes to the occupational categories, considered comments on the issue, and determined to change its policy, providing coherent and valid reasons for doing so.[14] See FY 2008 IPPS Final Rule, 72 Fed. Reg. at 47,135 (discussing modifications to 2006 survey for the 2007–2008 survey); FY 2010 IPPS Final Rule, 74 Fed. Reg. 43,754, 43,927–33 (Aug. 27, 2009); cf. Anna Jaques, 33 F. Supp. 3d at 56.

### B. Application of 2006 Survey Instructions to OHI's Occupational Mix Data

OHI challenges the PRRB decision upholding the reclassification as arbitrary and capricious. OHI contends that its medical technicians should have been included in the Nursing Aides category and because they were not, OHI's occupational mix adjustment was calculated incorrectly. The Secretary contends that the PRRB's decision to re-classify the medical technicians in the All Other Occupations category was consistent with the Secretary's policy in place at the time and that the decision is supported by substantial evidence and is reasonable. The Court agrees.

---

[14] Notably, and contrary to OHI's assertions, the 2007–2008 survey did not "place the technicians where they have always belonged in the Nursing Aides classification," (Pl.'s Reply & Resp. [DN 20] 14). The 2007–2008 survey did not change the definition of Nursing Aides, Orderlies, and Attendants to include medical technicians. The revision added "Surgical Technologists," which is its own BLS occupational category, to a category with the LPNs. See Form CMS-10079 (2008) at 5 (A.R. at 223). There was no change to the Nursing Aides, Orderlies, and Attendants category. Compare Form CMS-10079 (2006), with Form CMS-10079 (2008). In fact, OHI acknowledges this later on its brief. (See Pl.'s Reply & Resp. [DN 20] 21.)

### 1. **2006 Occupational Mix Survey & Supplemental Instructions**

On the 2006 survey, employees were classified in either a Nursing category or the All Other Occupations category. The Nursing category had four subcategories: (1) RNs, (2) LPNs, (3) Nursing Aides, Orderlies, Attendants ("Nursing Aides"), and (4) Medical Assistants.[15] See Form CMS-10079 (2006) (A.R. at 96–99). Like the 2003 survey, "[t]he general occupational categories and definitions included in this survey derive directly from the U. S. Bureau of Labor Statistics (BLS), 2001 Occupational Employment Statistics survey." Form CMS-10079 (2006) at 4 (A.R. at 97). "As with the BLS survey, workers should be classified in the occupation that requires their highest level of skill." Id.

The CMS instructions for the 2006 survey define the positions to be considered for the nursing category. See Form CMS-10079 (2006) (A.R. at 96–99); Supplemental Instructions for the Medicare Wage Index Occupational Mix Survey (Form CMS-10079 (2006)) for the FY 2007 Wage Index (A.R. at 201).[16] For registered nurses, the instructions state that licensing or registration is required. Form CMS-10079 (2006) at 4 (A.R. at 97). For licensed practical nurses, the instructions state that licensing is required after the completion of a state-approved practical nursing program. Id. at 5 (A.R. at 98). Nursing aides, orderlies, and attendants are defined as employees who "[p]rovide basic patient care under direction of nursing staff" and "[p]erform duties, such as feed, bathe, dress, groom, or move patients, or change linens." Id. Examples of nursing aides, orderlies, and attendants are certified nursing assistant, hospital aide, and infirmary attendant. Id. Medical assistants are defined as employees who

---

[15] "Medical Assistants are nursing employees for purposes of the occupational mix survey. Whenever the terms 'nursing staff', 'nursing personnel', 'nursing occupations', nursing employees, or 'nursing categories' are used with regards to the occupational mix survey, they are deemed to include medical assistants." Supplemental Instructions ¶ 1 (A.R. at 201).

[16] Supplemental Instructions for the Medicare Wage Index Occupational Mix Survey (Form CMS-10079 (2006)) for the FY 2007 Wage Index, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/Supplemental_Survey_Instructions.pdf.

perform[] administrative and certain clinical duties under the direction of a physician. Administrative duties may include scheduling appointments, maintaining medical records, billing, and coding for insurance purposes. Clinical duties may include taking and recording vital signs and medical histories, preparing patients for examination, drawing blood, and administering medications as directed by physician. Exclude "Physician Assistants."

Id. Examples of medical assistants are morgue attendant, ophthalmic aide, and physicians aide.

Id. "Note: Include only those employees who perform administrative and certain clinical functions under the direction of a physician in the IPPS cost centers and outpatient areas of the hospital that are included in the wage index. Do not include phlebotomists, Information technology personnel, health information management personnel, and general business office personnel in the Medical Assistants category." Id.

The "All Other Occupations" category definition provides:

Non-nursing employees (directly hired and under contract) in IPPS reimbursable cost centers and outpatient departments that are included in the wage index (i.e., outpatient clinic, emergency room) must be included in the "All Other Occupations" category. In addition, this category would include the wages and hours of nurses that function solely in administrative or leadership roles, that do not directly supervise staff nurses who provide patient care, and do not provide any direct patient care themselves. This category must not include occupations that are excluded from the wage index (such as physician Part B services, interns, and residents, nurse practitioners, clinical nurse specialists, certified nurse midwives, and certified registered nurse anesthetists). Also, the "All Other Occupations" category must not include employees in areas of the hospital that are excluded from the wage index via Worksheet S-3, Part II, Lines 8 and 8.01, such as skilled nursing, psychiatric, and rehabilitation units and facilities. Therapists and therapy assistants, equipment technologists and technicians, medical and clinical laboratory staff, pharmacists and pharmacy technicians, administrators (other than nursing), computer specialists, dietary, and housekeeping staff are examples of employees who should be reported in the "All Other Occupations" category. Also include the wages and hours of personnel from the home office or related organizations if they perform solely administrative functions and work in IPPS cost centers and outpatient departments that are included in the wage index.

Id. at 5–6 (A.R. at 98–99).

In an e-mail to FIs dated May 23, 2006, CMS stated that it had "been made aware that there are other types of personnel that may be similar to the nurses or MAs." (E-mail from CMS to FIs, May 23, 2006, A.R. at 202.) CMS explained that it had "consider[ed] issuing a clarification to expand the number of personnel falling within the nursing category," [b]ut "decided it's too late in the game for the first 3-month survey, and [it] didn't want to issue something quickly only to learn of other personnel that were overlooked." (Id.) "So to try to keep things consistent across hospitals, we are keeping things as is for now--that is, only the employees specifically falling into RN, LPN, NAs, or MAs should be reported in the nursing category. Everyone else (including OR scrub techs) should be reported in the All Other category." (Id.)

On May 25, 2006, CMS issued supplemental instructions, which provided clarifications to the 2006 survey instructions and definitions, including:

> Only nurses, nurses aides/orderlies/attendants, and medical assistants, as defined on the survey, can be included in the respective RNs-Management, RNs-Staff/Clinician, LPNs, Aides/Orderlies/Attendants, and MAs categories. Do not include other occupations that may provide similar services as nursing personnel. Instead, those occupations (if assigned to IPPS/OPPS areas of the hospital) must be included in the All Other Occupations category. For example, surgical technicians and hospital-based paramedics may provide services that are similar to those provided by nursing personnel; however, on the occupational mix survey, these non-nursing occupations must be included in All Other Occupations. This is to ensure consistent reporting among hospitals.

Supplemental Instructions to 2006 Survey for the FY 2007 Wage Index ¶¶ 1, 4 (A.R. at 201). In e-mail correspondence with the FIs, CMS stated that, although the example given in the supplemental instructions listed only surgical technicians and paramedics as examples of occupations that may provide services similar to nursing personnel but that must be included in the All Other Occupations category, "our policy for the inclusion of 'other technicians, such as Anesthesia Techs, OB Techs, Endoscopy Techs, ER Techs, Telemetry Techs, Mental Health

Techs, etc., remains the same. Per the supplemental instructions for the occupational mix survey, only nurses, nurses aides/orderlies/attendants, and medical assistants as defined on the survey, can be included in the respective RNs Management, RNs Staff/Clinician, LPNs, Aides/Orderlies/Attendants, and MAs categories. DO NOT include other occupations that may provide similar services as nursing personnel. Instead, those occupations (if assigned to IPPS/OPPS areas of the hospital) must be included in the All Other Occupations category. Once again, this is to ensure consistent reporting among hospitals." (E-mail from CMS to FIs, July 25, 2006, A.R. at 149.)

2. **PRRB Decision**

In its decision, the PRRB noted that CMS specifically instructed the FIs to strictly apply the definitions in order to ensure consistency among hospitals. (A.R. at 18 (citing Supplemental Instructions).) For the 2006 OM survey, it was CMS policy that "[o]nly nurses, nursing aides/orderlies/assistants, and medical assistants, as defined on the survey, can be included in the respective nursing categories." Supplemental Instructions to 2006 Survey for the FY 2007 Wage Index ¶ 4 (A.R. at 201). All other occupations, even if they provide similar services as nursing personnel, must be included in the All Other Occupations category. Id.

In the instant case, the PRRB concluded that OHI's medical technicians were not any of the nursing occupations defined on the 2006 survey. Regarding the RN and LPN categories, the PRRB found that the medical technicians were not RNs or LPNs as defined under the 2006 survey instructions, as there was no evidence or argument that any of the medical technicians were licensed as either registered nurses or licensed practical nurses. (A.R. at 18–19.) Regarding the Medical Assistant category, the PRRB found that OHI had not submitted into the record that any of the medical technicians were under the direction of a physician. (A.R. at 18.) Regarding the Nursing Aides, Orderlies, and Attendants category, the PRRB set forth the position descriptions

of OHI's three medical technician positions and found that OHI's medical technicians could not be classified in the Nursing Aides category because the technicians performed a higher level of patient care than that of the aides, orderlies, and attendants. (A.R. at 19.) Thus, per the CMS policy, they could not be included in the nursing categories regardless of whether they provided similar services as nursing personnel. Accordingly, the PRRB concluded that the FI properly characterized OHI's medical technicians in the All Other Occupations category.

The Court finds the PRRB's decision is supported by substantial evidence in the record and is reasonable. As OHI points out, the medical technicians at issue do provide services similar to those listed in in the nursing aides definition. However, the Nursing Aides, Orderlies, and Attendants category is defined as providing "*basic* patient care," and, as the Secretary argues and the PRRB found, the medical technicians here provide a higher level of care than that of the nursing aides, orderlies, and attendants. (<u>See</u> A.R. at 19); <u>cf.</u> Form CMS-10079 (2006) at 4 (A.R. at 97) ("As with the BLS survey, workers should be classified in the occupation that requires their highest level of skill."). Further, the supplemental instructions make explicit that these medical technicians who do not meet the definitions for nursing personnel, even though they may provide similar services as nursing personnel, must be included in the All Other Occupations category. Supplemental Instructions to 2006 Survey for the FY 2007 Wage Index (A.R. at 201.) Given the strict construction CMS instructed be given to the survey definitions and the Nursing Aides position defined as providing "basic patient care," the PRRB came to a reasonable conclusion supported by substantial evidence in the record that the medical technicians here provide a higher level of care than that of the aide, orderly, and attendant, and therefore that the medical technicians were not within that category.

OHI emphasizes its contention that, for the 2007–2008 survey (to be applied to the FY 2010 wage index), the Secretary began classifying surgical technologists the way that OHI maintains is required here. OHI contends that CMS's subsequent revision—which added surgical technologists into a nursing category with LPNs—"demonstrates that [OHI] was correct in its initial classification of its medical technicians," (Pl.'s Mot. Summ. J. & Supp. Mem. [DN 16] 17), and "confirms that medical technicians do not belong in the All Other Occupations category for the 2006 survey, (Pl.'s Reply & Resp. [DN 20] 22). The Court disagrees. That the 2007–2008 survey added surgical technologists into a nursing category with LPNs does not somehow alter the applicable 2006 survey, under which OHI's medical technicians were properly in the All Other Occupations category. Further, the non-applicable 2007–2008 OM survey did not change the definition of Nursing Aides, Orderlies, and Attendants—the category that OHI contends its medical technicians should have been in for the FY 2007 wage index—to include medical technicians. The revision added "Surgical Technologists," which is its own BLS occupational category, to a category with the LPNs. See Form CMS-10079 (2008) at 5. There was no change to the Nursing Aides, Orderlies, and Attendants category. Compare Form CMS-10079 (2006), with Form CMS-10079 (2008).

**C. OHI alleges that its OMA was not calculated uniformly**

OHI contends that the Secretary acted arbitrarily in failing to classify medical technicians uniformly for all hospitals. Specifically, OHI represents that "[t]he misclassification of [OHI]'s medical technicians differently from other hospitals' classifications compromises the required uniformity of the Occupational Mix Survey and, consequently, the Area Wage Index." (Pl.'s Mot. Summ. J. & Supp. Mem. [DN 16] 12.) OHI maintains that the proper remedy for this alleged uniformity violation is a recalculation of OHI's FY 2007 occupational mix adjustment in

a manner contrary to CMS policy at the time and different from how medical technicians were classified for thirty-five of the forty-five hospitals OHI requested FOIA data on.

OHI contends that <u>Sarasota Memorial Hospital v. Shalala</u>, 60 F.3d 1507 (11th Cir. 1995), is directly on point in supporting its position.   In <u>Sarasota</u>, the Eleventh Circuit found that the Secretary erred in refusing to include one hospital's (Memorial's) employer-paid employee FICA taxes as wages for purposes of the wage index calculation, when employee-paid employee FICA taxes, withheld from employees' wages at other hospitals, were included as wages in the wage index calculation.   "Because the Secretary was required to establish a wage index to create a uniform picture of what wage levels were at all provider hospitals in 1982, we hold that the Secretary's exclusion of employee FICA taxes from wages for some hospitals and not others, for purposes of creating the 1982 wage index, was arbitrary and capricious."   60 F.3d at 1513.

The Court agrees with the Secretary that the issue in <u>Sarasota</u> is not the same issue before the Court in this case.   In <u>Sarasota</u>, the providers—which were all hospitals within Sarasota Memorial Hospital's labor market—were challenging a CMS *policy* that treated differently two costs that were fundamentally the same.   60 F.3d at 1513 (emphasis added) (holding that "the *Secretary's policy* of excluding employer-paid employee FICA taxes from wages is inconsistent with the mandate of § 1395ww(d)(3)(E) of the Medicare Act").   This deferential treatment by the CMS policy violated the uniformity principle of the wage index.   <u>Id.</u> ("The uniformity of the wage index is compromised if the Secretary does not classify the same items of costs as wages for *all* providers.").   The matter was remanded to the Secretary to afford the providers within the Sarasota labor market the relief that had been stipulated (retroactive relief—revision of the Sarasota-labor market 1982 wage index to include Memorial's FICA payments as wages in the wage index calculation).   <u>Id.</u> at 1513–14.

Here, by contrast, there is no CMS *policy* that treats differently two costs that are fundamentally the same. Under the applicable CMS policy—the 2006 Survey and supplemental instructions—medical technicians like OHI's are in the All Other Occupations" category. What occurred here, and what OHI complains of, is a *misapplication* (or non-application) of CMS policy by FIs to ten known hospitals. This error by FIs does not equate to a differential arbitrary policy of the Secretary. See Cnty. of Los Angeles v. Leavitt, 521 F.3d 1073, 1079 (9th Cir. 2008) (citations omitted) ("While a fiscal intermediary is the Secretary's agent for purposes of reviewing cost reports and making final determinations with respect to the total reimbursement due to a provider absent an appeal to the PRRB, intermediary interpretations are not binding on the Secretary, who alone makes policy.").

Additionally, OHI cites to no instances where a hospital was permitted to challenge wage data of another hospital not within the challenging hospital's labor market area. As the Court understands it, the wage data midyear correction process is governed by 42 C.F.R. § 412.64(k), which permits a hospital to challenge only its own wage data, see FY 2007 IPPS First Proposed Rule, 71 Fed. Reg. at 24,089 ("This provision is not available to a hospital seeking to revise another hospital's data that may be affecting the requesting hospital's wage index for the labor market area."); id. at 24,090 ("the provision [42 C.F.R. § 412.64(k)(2)] is not available to a hospital seeking to revise another hospital's data"); see also FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,008–09. Wage index appeals to the PRRB, which must be made within 180 days from the publication of the final wage index in the Federal Register, see 42 U.S.C. § 1395*oo*(a)(3); D.C. Hosp. Ass'n Wage Index Grp. Appeal, Medicare & Medicaid Guide (CCH) ¶ 41,025 (HCFA Adm. Dec. January 15, 1993), may be made by either (1) a hospital appealing based on its own data, provided the hospital exhausted administrative procedures established to

correct its own data, or (2) other hospitals in the same labor market area as the hospital with the incorrect data who were impacted by the incorrect data, <u>Chicago 98-00 MSA Wage Index Group v. Mutual of Omaha Ins. Co.</u>, PRRB Dec. No. 2006-D7 (CCH ¶ 81,455), 2005 WL 3741482, at *5–8 (Dec. 15, 2005) (PRRB had no jurisdiction over single provider that did not exhaust remedies by failing to follow process to correct data; PRRB did have jurisdiction over the other 81 hospitals in same MSA regarding same alleged flaw in wage index, although it did not have authority to grant the remedy sought: update of their MSA wage index with the single provider's corrected data), <u>review declined</u>, CMS Adm'r, <u>appealed sub nom.</u>, <u>Adventist Glenoaks Hosp. v. Leavitt</u>, No. 1:06-CV-01206, D.D.C. (parties settled).

Here, OHI is in a single hospital CBSA. The ten identified hospitals are not in OHI's CBSA. The occupational mix adjustment is made at the CBSA/market level. <u>See</u> FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,010; (Pl.'s Mot. Summ. J. App. A [DN 16-1] 3–4; <u>see also</u> <u>id.</u> at 7 ("The OMA affects all hospitals in a given market in the same way.")). As noted, OHI has not referred the Court to any authority, and the Court has not found any authority, wherein a hospital was permitted to appeal the wage index based on the wage data of a hospital not within the challenging hospital's labor market. The only challenges permitted regarding the wage data of another hospital have been by a hospital within the same market. <u>See, e.g.</u>, <u>Sarasota Mem'l Hosp.</u>, 60 F.3d 1507 (Sarasota MSA)[17]; <u>Atrium Med. Ctr.</u>, 766 F.3d 560 (Cincinnati-Middleton MSA and rural-Iowa wage index); <u>Adventist GlenOaks Hosp.</u>, 663 F.3d at 942 (Rhode Island MSA, rural-Kentucky wage index, and Chicago MSA); <u>Centra Health, Inc. v. Shalala</u>, 102 F. Supp. 2d 654 (W.D. Va. 2000) (Lynchburg MSA). If a hospital cannot challenge a final

---

[17] Prior to using the CBSA labor market definitions to assign wage indices to hospitals, the Secretary used geographic areas called Metropolitan Statistical Areas ("MSAs"), which were developed and periodically reviewed by the Office of Management and Budget. <u>See</u> <u>Adventist GlenOaks Hosp. v. Sebelius</u>, 663 F.3d 939, 941 (7th Cir. 2011). "Hospitals not located within a designated MSA [were] classified as 'rural' and share[d] a statewide rural wage index." <u>Id.</u> at 941 n.2 (citing FY 2005 IPPS Final Rule, 69 Fed. Reg. 48,916, 49,026 (Aug. 11, 2004)).

published wage index based on erroneous wage data of a hospital outside the complaining-hospital's labor market, then it seems to follow that a hospital cannot challenge a final published wage index based on erroneous occupational mix data of a hospital outside the complaining-hospital's labor market. Accordingly, whether there is a remedy for OHI based on the classification of medical technicians contrary to governing CMS policy for ten hospitals that are outside OHI's labor market is unclear. However, it is clear that the retroactive classification of OHI's medical technicians contrary to governing CMS policy—the remedy requested by OHI—is not an appropriate remedy.

## IV. PLAINTIFF'S MOTION FOR ORAL ARGUMENT

The Court finds no need to schedule an oral argument because the parties have adequately addressed the pertinent issues in their briefs. OHI's motion for oral argument is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Plaintiff Owensboro Health, Inc. [DN 16] is **DENIED** and the motion for summary judgment by Defendant Sylvia M. Burwell, Secretary of Health and Human Services, [DN 17] is **GRANTED**. A judgment shall be entered consistent with this Opinion.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument [DN 22] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 11, 2016

cc:     Counsel of Record